UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RICHARD COURTEMANCHE,

        Plaintiff,                   Case No. 1:12-cv-841

v.                                           Honorable Janet T. Neff

RICHARD CZOP et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Michigan Department of Corrections because it is immune from suit. The Court will serve the complaint against Defendants Czop, Pandya, Prison Health Services, Inc., and Corizon, Inc.

**Discussion**

  I.  Factual allegations

Richard Courtemanche presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF). He sues the following Defendants: ICF Dr. Richard Czop; Regional Health Director Dr. Haresh Pandya; Prison Health Services, Inc. (PHS), Corizon, Inc., and the MDOC.

Plaintiff alleges that, beginning in January 2005, he began to experience seizures, motor tics, and spontaneous vocalizations. Following examinations by a physician, a psychologist, a psychiatrist, and after an electroencephalogram (EEG) was conducted, Plaintiff was diagnosed with complex partial seizures, a generalized seizure disorder and epilepsy. Since that time, he has been prescribed four different medications to control the seizures. The most effective treatment was a daily dose of 1000 mg of Depakote combined with 2400 mg of Neurontin. Plaintiff was treated with those two drugs for five years and at those doses for three years. For two of those years, he was under the care of Defendant Czop.

In 2009, two more EEGs were performed while Plaintiff was on his medications. Plaintiff did not have a seizure during the tests, and they were deemed inconclusive. Because a neurologist, Dr. Verma, believed that the medication could have affected the test, he recommended that Plaintiff be sent to the University of Michigan for a three-day video-monitored EEG, which was approved by the then-current MDOC medical services provider, Correctional Medical Services, Inc. However, before the test could be completed, PHS won the contract to provide medical services to the MDOC. PHS then cancelled approval of the test, and, since that time, Plaintiff has not been examined by a neurologist or other specialist. Plaintiff has been examined or treated by eleven

medical and mental health providers, all of whom agreed with the prescribed neurological treatment and the original diagnosis.

On September 20, 2011, Defendant Czop told Plaintiff that he was renewing the prescription for Neurontin at the dose Plaintiff had been receiving for two years. On September 21, 2011, however, without consulting a neurologist or performing neurological tests, Defendant Czop told Plaintiff that he believed that Plaintiff's medical condition did not have a neurological basis and, therefore, Czop would discontinue both Neurontin and Depakote. According to Plaintiff's allegations, the medical records reveal that Czop decided to terminate treatment only after he was informed that Neurontin would have to be approved by Defendant Pandya, which would be more problematic. During the succeeding four months, Defendant Czop changed his diagnosis no less than six times. On October 26, 2011, Defendant Czop admitted to Plaintiff that, based on the EEG report and Plaintiff's worsening condition, epilepsy was possible and that the three-day video EEG was appropriate, but Czop needed the cooperation of the psychiatrist, Dr. Choi and Defendant Regional Medical Director Pandya, because Defendant Corizon would not order it. That same date, Dr. Choi interviewed Plaintiff and determined that his condition was neither psychosis nor Tourette's Syndrome, and he concluded that no further tests were necessary. Dr. Czop disagreed with Dr. Choi and indicated his continued intent to discontinue epilepsy medications, though he admitted that the Neurontin helped the condition.

On November 2, 2011, Defendant Czop asked Regional Medical Director Dr. Stephen Berkman to interview Plaintiff. Berkman had no dispute with the diagnosis of epilepsy or the treatment with Neurontin and Depakote. Defendant Czop continued to disbelieve the diagnosis,

despite his acknowledgment that he was not an expert in epilepsy. Czop became angry and stated that the EEGs meant nothing and that he was the doctor.

After Plaintiff's medications were withdrawn, Plaintiff's seizures increased dramatically, occurring multiple times each week and occasionally multiple times each day. Defendant Czop was informed of the increase on numerous occasions between October 5, 2011 and February 13, 2012. Czop nevertheless refused either to restore the seizure medication or to try another seizure-control medication.

Defendant Pandya approved Defendant Czop's plan to terminate the seizure medications on September 23, 2011. On January 10, 2012, after being served with a notice of intent to file suit by an outside party, Defendant Pandya informed Defendant Czop that Plaintiff "does have a seizure disorder" and told him not to proceed with the discontinuation of Depakote. (Compl. ¶ 26, docket #1, Page ID#8.) Pandya did not, however, restore the Neurontin prescription, despite receiving evidence of the dramatic increase in Plaintiff's seizure activity.

Plaintiff alleges that Defendants PHS, Corizon and the MDOC and their employees, including Doctors Czop and Pandya, implemented a custom or policy of denying or terminating medications to prisoners with chronic illnesses, purely as a cost-saving measure, without regard to medical need. Specifically, Plaintiff alleges that on numerous occasions he has been informed by Defendant Czop that the institutional Defendants would not pay for tests and treatments because of costs.

Plaintiff seeks declaratory and injunctive relief, together with compensatory, punitive and special damages.

  II.  Michigan Department of Corrections

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at \*2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC.

  III.  Remaining Defendants

The Court concludes that Plaintiff has alleged sufficient facts to warrant service of the complaint on the remaining Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Michigan Department of Corrections will be dismissed pursuant to 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because it is immune from suit. The Court will serve the complaint against Defendants Czop, Pandya, Prison Health Services, Inc., and Corizon, Inc.

        An Order consistent with this Opinion will be entered.


Dated: September 4, 2012          /s/ Janet T. Neff
        Janet T. Neff
        United States District Judge